**E-FILED**
Wednesday, 07 December, 2016  04:12:23 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 16-cr-30061** |
| | ) | |
| **AARON J. SCHOCK,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION

**SUE E. MYERSCOUGH, U.S. District Judge**

This cause is before the Court on Defendant Aaron J. Schock's
Motion for An Intra-District Transfer to the Peoria Division
Pursuant to Fed. R. Crim. P. 18 (d/e 11).   Defendant argues that
this case has virtually no connection to Springfield and that Peoria
is the more convenient and appropriate division.  The Government
objects to Defendant's motion, arguing that an intra-district
transfer is not more convenient for the witnesses, would not be
consistent with the prompt administration of justice, and should
not be used to further an effort by Defendant to directly appeal to
potential jurors.

Because the convenience of the witnesses and the prompt administration of justice do not support transfer at this time, the Motion is denied with leave to refile.

## I. BACKGROUND

The Central District of Illinois is divided into four divisions: the Springfield Division, the Peoria Division, the Urbana Division, and the Rock Island Division.  See CDIL-LR 40.1 (identifying the divisions and the counties contained in each division).  The distance between the district courts in Springfield and Peoria is approximately 73 miles with a travel time of approximately one hour and fifteen minutes.

In April 2015, the Chief Judge of this district, James E. Shadid, referred the Grand Jury investigation and other proceedings relating to Defendant to this Court in the Springfield Division.  On November 10, 2016, the Grand Jury returned an Indictment charging Defendant with nine counts of wire fraud, one count of mail fraud, one count of theft of government funds, two counts of making false statements, five counts of falsifying FEC filings, and six counts of filing false federal tax returns.  The Indictment alleges that Defendant engaged in a scheme to defraud

the United States, his campaign committees, and others, including his constituents, and made false statements and filed false tax returns.

Defendant was a U.S. Representative for the 18th Congressional District of Illinois from 2009 to March 2015.  The 18th Congressional District is entirely within the Central District of Illinois and encompasses all or parts of ten counties in the Springfield Division, six counties in the Peoria Division, and three counties in the Rock Island Division.  Defendant maintained his primary Congressional and campaign offices in Peoria but also maintained Congressional offices in Washington, D.C., Springfield, Illinois, and Jacksonville, Illinois.  Springfield and Jacksonville are in the Springfield Division.  Defendant resided and continues to reside in Peoria, Illinois.

## II. LEGAL STANDARD

The proper venue in criminal cases is the district in which the offense was committed.  United States v. Morrison, 946 F.2d 484, 490 (7th Cir. 1991); see also United States v. Merrill, 513 F.3d 1293, 1304 (11th Cir. 2008) (noting that the Sixth Amendment guarantees a trial in the state and district where the crime was

committed).  When an offense begins in one district and continues

in other districts, venue is proper in any district in which the

offense was "begun, continued, or completed."  18 U.S.C. § 3237(a);

United States v. Sidener, 876 F.2d 1334, 1337 (7th Cir. 1989).

Transfer from one district to another district is governed by Federal

Rule of Criminal Procedure 21.  See, e.g., United States v. Bartelt,

No. 96 CR 50034, 1997 WL 436229, at *2 (N.D. Ill. July 7, 1997)

(Rule 21 governs transfers between districts).

A defendant does not, however, have a constitutional right to

be tried within a certain division of a particular district, so long as

the trial takes place within the district in which the offense

occurred.  Humphrey v. United States, 896 F.2d 1066, 1068 (7th

Cir. 1990); United States v. Taylor, 316 F. Supp.2d 722, 726 n.5

(N.D. Ind. 2004); see also United States v. Burns, 662 F.2d 1378,

1382 (11th Cir. 1981) (noting that "since the 1966 amendment [to

Rule 18,] a division of a federal judicial district is no longer a unit of

venue in criminal cases").  Transfer from one division to another is

governed by Federal Rule of Criminal Procedure 18.  Bartelt, 1997

WL 436229, at *2 (Rule 18 governs transfers between divisions but

also noting that the analysis under Rule 18 and Rule 21 is

essentially the same).

Pursuant to Rule 18, the district court takes into

consideration the convenience of the defendant, the witnesses, and

any victims, as well as the prompt administration of justice, when

determining the location of the trial within the district:

> Unless a statute or these rules permit otherwise, the
> government must prosecute an offense in the district
> where the offense was committed.  The court must set
> the place of trial within the district with due regard for
> the convenience of the defendant, any victim, and the
> witnesses, and the prompt administration of justice.

Fed.R.Crim.P. 18.  The court may also consider other factors, such

as pretrial publicity and court security.  See United States v.

Lipscomb, 299 F.3d 303, 340 (5th Cir. 2002).

A defendant seeking transfer bears the burden of showing that

a transfer is appropriate but need only show that, "all relevant

things considered, the case would be better off transferred to

another district." In re United States, 273 F.3d 380, 388 (3rd Cir.

2001) (involving Rule 21(b)) (quoting In re Balsimo, 68 F.3d 185,

187 (7th Cir. 1995) (involving Rule 21(b))).  A district court has

broad discretion in deciding where to fix the location of the trial.

United States v. Balistrieri, 778 F.2d 1226, 1229 (7th Cir. 1985) (involving Rule 18 and affirming the trial court's decision to move jury selection to the Green Bay Division and exclude the Milwaukee Division jurors from the venire); but see United States v. Fernandez, 480 F.2d 726, 731 (2d Cir. 1973) (finding that "the holding of a criminal trial, over the objection of the defendant, in a place removed from the court's headquarters, having no relation to the place of the crime, and for no apparent reason other than the convenience of the judge, may lead to the appearance of abuses") (internal marks omitted).

### III. ANALYSIS

Defendant argues that this case should be tried in the Peoria Division because that is where Defendant has lived for 25 years and his principal district office and campaign committee offices were located there.  Defendant also asserts that the vast majority of Illinois witnesses, including friends and family, major donors, and staff members, reside in Peoria or Washington, D.C., and that none of them live in Springfield.  Defendant does not identify specific witnesses or the subject of their testimony.

Defendant further asserts that, to the extent the alleged misconduct occurred in the Central District of Illinois, that conduct occurred in the Peoria Division, not in the Springfield Division. Finally, Defendant states he is not aware of any docket or facility conditions in the Peoria Division that would significantly impede his right to a speedy and fair trial.

The Government acknowledges in its response to the motion that Defendant resides in Peoria, maintained his principal Congressional office and campaign office in Peoria, and the majority of the financial transactions described in the Indictment involved payments from and to accounts in Peoria and Washington, D.C. However, the Government denies Defendant's contention that this case has no connection to Springfield. The Government states that certain conduct and the overall charged scheme to defraud involved the Springfield Division, including, by way of example, Count 8, alleging payment to an Illinois designer located in Jacksonville, Illinois, and Count 9, alleging Defendant defrauded constituents, including residents of the Springfield Division. See Gov't Response ¶ 18 (d/e 12) (also identifying other examples).

The Government further notes that, while it is impractical to estimate the length of trial and the number of witnesses at this early stage, the trial could be four to six weeks long with as many as 100 potential Government fact witnesses.  Of these potential witnesses, 28 are from Peoria and only five are expected to provide testimony of any length that could require an appearance for more than one day of trial.  Of the remaining 72 potential witnesses, 16 are from elsewhere in Illinois, including Springfield, Champaign, Jacksonville, Cahokia, Wenona, Canton, and Chicago.  The remaining 56 are from Washington D.C., Georgia, Colorado, California, Montana, Missouri, Texas, New York, and Massachusetts.

The Government also asserts that the prompt administration of justice warrants denying the motion.  The Government notes that the four divisions of the Central District are each served by one active district judge and three of the divisions are also served by one or more senior district judges.  A transfer to the Peoria Division for trial would necessarily involve this Court and her staff traveling to Peoria, which would require that this Court reschedule hearings and conferences in numerous civil and criminal actions currently

set in the Springfield Division and which would curtail the prompt administration of justice.  The Government also argues that Defendant has failed to make a strong showing of prejudice from conducting the trial in the Springfield Division.

Finally, the Government asserts that the Court should deny transfer to avoid conducting the trial in the location where Defendant has generated prejudicial pretrial publicity.  The Government notes that Defendant convened a press conference on the same day the Grand Jury returned the Indictment but before its public return, and he and his attorneys read prepared written statements appealing to the Peoria community.  The Government argues that Defendant's true agenda is to seek to move his trial to Peoria where he believes his pretrial publicity efforts are more likely to be successful.  The Government also argues that Defendant's own inflammatory pretrial publicity and direct appeals to potential jurors would lead to greater difficulty in selecting a fair and impartial jury.

At this early stage in the litigation, the Court finds that Defendant has failed to make a sufficient showing that a transfer to the Peoria Division for trial would be more convenient to the

witnesses and promote the prompt administration of justice.  While the Peoria Division would be more convenient to Defendant because he resides there, that convenience does not outweigh the other factors, particularly in light of the fact that Defendant does not have a constitutional right to be tried in a particular division and the Springfield Division is only 73 miles from Peoria.

The convenience of the witnesses does not, at this juncture, warrant transfer.  Defendant has not identified specific witnesses who will be inconvenienced by a trial in the Springfield Division. See Bartelt, 1997 WL 436229, at *3 (denying motion to transfer, noting in part that the defendant only made a generalized claim that numerous out-of-state witnesses might be called to testify and that the ease of transportation made the proposed division more convenient; the defendant also failed to identify the witnesses or the subject matter of their expected testimony).  Moreover, the Government has indicated that the majority of potential witnesses reside outside of Illinois such that one district is not more convenient than another as to the majority of the witnesses.  The weighing of this factor may change once the case gets closer to trial, and the parties have a better idea which witnesses are expected to

testify.  At this juncture, however, the Court finds that the Peoria

Division is not a more convenient forum than the Springfield

Division.

In addition, the prompt administration of justice weighs in

favor of keeping the trial in the Springfield Division.  A trial in the

Peoria Division will require that this Court use one of the

courtrooms in Peoria for four to six weeks, thereby affecting the

docket management of the Peoria judges, which include one active

judge, two senior judges, and one magistrate judge who share four

courtrooms.  In addition, this Court's docket will also be affected

because the Court will have to reschedule court hearings in the

Court's other cases which, if the trial remains in the Springfield

Division, could be addressed before this trial begins for the day,

during recesses, and after court has adjourned for the day.  See

United States v. Tettleton, No. 09-00015-01/02, 2009 WL 1307888,

at *2 (W.D. La. May 8, 2009) (finding that while the defendant's

preferred division might be more convenient, the inconvenience of

the transferee division was slight because the distance between the

two cities could be traveled in less than two hours and docket

management necessitated the jury trial be conducted in the

transferee district);  United States v. Scott-Emuakpor, No. 1:99-CR-138, 2000 WL 288443, at *13 (W.D. Mich. Jan. 25, 2000) (finding that while an intra-district transfer would be more convenient to the defendant, judicial efficiency was the "more practical concern," noting that space for trial in the proposed transferee district was limited, transfer would burden the court and staff, and transfer would impact the other cases on the court's docket).

The Court has also considered other factors.  Defendant's counsel are located in Chicago, Illinois, Davenport, Iowa, and Washington, D.C., not in the Peoria or Springfield Divisions. Therefore, one division is not more convenient than the other for defense counsel.  Pretrial publicity does not appear to differ greatly in either division.  In fact, the Springfield newspaper is actually published in Peoria.  In addition, contrary to Defendant's assertion, a nexus to the Springfield Division does exist because certain alleged conduct and the overall charged scheme to defraud involved the Springfield Division, including the alleged payment to the Jacksonville, Illinois designer (Count 8) and the fact that the allegedly defrauded constituents would include residents of the Springfield Division (Count 9).

Finally, some courts require that a defendant seeking transfer show prejudice before an intra-district transfer is granted.  <u>See</u> <u>United States v. Duncan</u>, 919 F.2d 981, 985 (5th Cir. 1990) ("An intradistrict transfer is not required absent a strong showing of prejudice."); <u>Bartelt</u>, 1997 WL 436229, at * 2 (noting that a "court may fix another place of trial within the district if there is so great a prejudice against the defendant in the current venue that the defendant cannot obtain a fair and impartial trial").  No such showing has been made here.  In fact, vote totals in Defendant's 2012 and 2014 elections in the counties in both divisions show Defendant's vast popularity.  Therefore, it is unlikely that Defendant will be prejudiced by a trial in the Springfield Division.  <u>See</u> 2012 and 2014 Ballots Cast, Appendix.[1]   Further, the Court has no reason to believe that this division is a more favorable division for the prosecution.

---

[1] Information obtained from the following websites on December 7, 2016:
https://www.elections.il.gov/ElectionInformation/VoteTotalsList.aspx?ElectionType=OcxMFeCn%2f2s%3d&ElectionID=vTUhLdn7S%2bI%3d&SearchType=qSfAwUdk1qOFOZFs8GbBdddK0yLOKECmUkSdD0Lok1c%3d&OfficeID=tSrDwlg5E57o%2fQ42U95N5Q%3d%3d&QueryType=qSfAwUdk1qOEjNYZC1%2bXwQ%3d%3d&;
https://www.elections.il.gov/ElectionInformation/VoteTotalsList.aspx?ElectionType=OcxMFeCn%2f2s%3d&ElectionID=N0i%2bx1RWLYs%3d&SearchType=qSfAwUdk1qOFOZFs8GbBdddK0yLOKECmUkSdD0Lok1c%3d&OfficeID=SO8ZG010ORwZCm%2f2GuNqyw%3d%3d&QueryType=qSfAwUdk1qOEjNYZC1%2bXwQ%3d%3d&

# IV. CONCLUSION

For the reasons stated, Defendant's Motion for an Intra-

District Transfer to the Peoria Division Pursuant to Fed. R. Crim. P.

18 (d/e 11) is DENIED without prejudice and with leave to refile.

ENTER: December 7, 2016

FOR THE COURT:

*s/Sue E. Myerscough*
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE

# APPENDIX

## 2012 Ballots Cast

| County | SCHOCK 143 | WATERWORTH 144 |
|---|---|---|
| ADAMS | 22775 | 7181 |
| BROWN | 1877 | 455 |
| CASS | 3482 | 1312 |
| HANCOCK | 6023 | 2742 |
| LOGAN | 9478 | 2364 |
| MARSHALL | 4242 | 1558 |
| MASON | 4090 | 2152 |
| McDONOUGH | 7578 | 4536 |
| McLEAN | 38170 | 13731 |
| MENARD | 4713 | 1320 |
| MORGAN | 10257 | 3566 |
| PEORIA | 34198 | 13524 |
| PIKE | 5522 | 1656 |
| SANGAMON | 38181 | 13243 |
| SCHUYLER | 2771 | 1069 |
| SCOTT | 1914 | 617 |
| STARK | 1519 | 509 |

| | | |
|---|---|---|
| **TAZEWELL** | 32641 | 10027 |
| **WOODFORD** | 15036 | 3602 |
| **Totals** | 244467 | 85164 |

# 2014 Ballots Cast

| County | SCHOCK 166 | MILLER 167 |
|---|---|---|
| **ADAMS** | 17648 | 4530 |
| **BROWN** | 1258 | 309 |
| **CASS** | 2713 | 1057 |
| **HANCOCK** | 4382 | 1490 |
| **LOGAN** | 6793 | 1808 |
| **MARSHALL** | 3027 | 1192 |
| **MASON** | 3495 | 1775 |
| **McDONOUGH** | 5793 | 2715 |
| **McLEAN** | 28198 | 9935 |
| **MENARD** | 3743 | 1079 |
| **MORGAN** | 8512 | 2648 |
| **PEORIA** | 24136 | 9544 |
| **PIKE** | 4401 | 1321 |
| **SANGAMON** | 30504 | 10785 |

| | | |
|---|---|---|
| SCHUYLER | 2405 | 847 |
| SCOTT | 1715 | 442 |
| STARK | 1082 | 359 |
| TAZEWELL | 23660 | 7601 |
| WOODFORD | 10898 | 2940 |
| Totals | 184363 | 62377 |