UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) Case No. 16-cr-30061 |
| vs. | ) |
| AARON J. SCHOCK, | ) |
| Defendant. | ) |

**DEFENDANT AARON J. SCHOCK'S MOTION FOR INTRADISTRICT TRANSFER**

COMES NOW Defendant Aaron J. Schock, by and through undersigned counsel, and respectfully moves this Honorable Court, pursuant to Federal Rule of Criminal Procedure 18, for an intra-district transfer to the Peoria Division of the United States District Court for the Central District of Illinois.

**INTRODUCTION**

On November 10, 2016, a federal grand jury returned a 24-count indictment ("the Indictment") against Mr. Schock, the former U.S. Representative of the 18th Congressional District of Illinois. The U.S. Attorney's Office ("USAO") caused the charges to be filed in the Springfield Division of the United States District Court for the Central District of Illinois. On November 28, 2016, Mr. Schock moved to transfer this case from the Springfield Division to the Peoria Division. Docket No. 11. The Court denied this motion, but, noting the early stage of the litigation, granted leave to refile. *See* Opinion, Docket No. 14. After Judge Myerscough recused herself from the case in January 2017, s*ee* Opinion, Docket No. 47, the case was reassigned to Judge Bruce in this Court's Urbana Division.

1

It has now come to Mr. Schock's attention that Chief Judge Shadid "is temporarily reassigning all cases in which the United States is a party that are pending before Judge Bruce," which would include Mr. Schock's case. *See* Andy Kravetz, *Judge in Aaron Schock Case Removed From All Cases Involving Federal Government*, Peoria Journal Star (Aug. 17, 2018) http://www.pjstar.com/news/20180817/judge-in-aaron-schock-case-removed-from-all-cases-involving-federal-government.[1] While the Court weighs the reassignment of this case, Mr. Schock submits this instant motion respectfully requesting that the case be transferred to this Court's Peoria Division.[2]

Peoria is the most convenient and appropriate division. Not only has Peoria been Mr. Schock's home for more than 25 years, including the entire period covered by the Indictment and his three-plus terms in office, he maintained both his principal district office and his campaign headquarters there. Unsurprisingly then, to the extent that the events alleged in the Indictment took place in Illinois, they occurred overwhelmingly in Peoria, and the majority of expected witnesses who live in Illinois reside in or around the city. By contrast, almost none of the alleged misconduct that allegedly took place in Illinois occurred outside of the Peoria Division.

Federal Rule of Criminal Procedure 18 directs this Court to set the place of trial after balancing several enumerated factors and weighing any considerations unique to this case. That task compels a clear conclusion here. Because the case has Illinois connections rooted firmly in

---

[1] Mr. Schock recognizes that this motion was submitted after the deadline to file pre-trial motions set by this Court. Mr. Schock respectfully requests that the Court give this motion full consideration, given that the circumstances that prompt it did not arise until after the Court's deadline.

[2] The instant motion seeks an intra-district transfer of venue without regard to which Judge is assigned to preside over the case.

Peoria, and lacks any significant connection to any other part of Illinois, it should be transferred to the Peoria Division for trial.³

## DISCUSSION

Rule 18 does more than require "the government [to] prosecute an offense in a *district where the offense was committed;*" it expressly directs "[t]he court [to] set the place of trial *within the district* with due regard for the convenience of the defendant, any victim, and the witnesses, and the prompt administration of justice." Fed. R. Crim. P. 18 (emphases added). A trial court thus enjoys "broad discretion in deciding where to fix the location of the trial . . . as long as [it] gives due consideration to the factors listed in Rule 18." *United States v. Balistrieri*, 778 F.2d 1226, 1229 (7th Cir. 1985) (quotation omitted). And "[a]lthough the text of Rule 18 refers only to convenience and prompt administration, the district court may consider other factors" raised by the case before it. *United States v. Lipscomb*, 299 F.3d 303, 340 (5th Cir. 2002); *see also* 2 Charles Alan Wright *et al.*, Federal Practice & Procedure § 305 (4th ed. 2013) ("Wright & Miller") ("There is substantial authority for the proposition that the court, in exercising its discretion about fixing the place of trial, may take into account numerous factors appearing in the particular case in addition to those listed in Rule 18.").

Moreover, "in evaluating motions for intradistrict transfer," courts may also "rely on the principles found in Fed. R. Crim. P. 21," governing transfers between districts. *United States v. Miller*, No. 06-40068, 2009 WL 4827060, at *5 (D. Kan. Dec. 11, 2009); *see also United States v. Bartelt*, No. 96-50034, 1997 WL 436229, at *2 (N.D. Ill. July 7, 1997) ("Apart from the fact that

---

³ Mr. Schock does not concede that venue is appropriate under Rule 18 for any particular count in the Indictment. *See* Fed. R. Crim. P. 18 (providing that "the government must prosecute *an offense* in a district where *the offense* was committed") (emphases added). Accordingly, Mr. Schock reserves the right to challenge the Indictment for lack of venue at an appropriate point in these proceedings.

Rule 18, and not Rule 21, governs here, the analysis is essentially the same."). These principles provide that a court should fix the location of a criminal trial based on the following factors:

> (1) location of corporate defendant; (2) location of possible witnesses; (3) location of events likely to be in issue; (4) location of documents and records likely to be involved; (5) disruption of defendant's business unless the case is transferred; (6) expense to the parties; (7) location of counsel; (8) relative accessibility of place of trial; (9) docket condition of each district or division involved; and (10) any other special elements which might affect the transfer.

*Platt v. Minnesota Min. & Mfg. Co.*, 376 U.S. 240, 243-44 (1964) (citing Fed. R. Crim. P. 21).

These factors, as well as those made explicit by Rule 18, counsel in favor of setting Mr. Schock's trial in Peoria. First, the vast majority of Illinois witnesses likely to testify reside in Peoria or within the Peoria Division. Second, the events occurring in the Central District of Illinois took place almost entirely in Peoria, which was home not only to Mr. Schock but also to his principal district office and campaign committees. And third, no factors properly weigh in support of a trial in any other Division.

First, the majority of anticipated witnesses who live in Illinois reside in Peoria. Indeed, witnesses in four crucial categories—Mr. Schock's close friends and family, his major donors, staff members of Schock for Congress, and members of Mr. Schock's district staff—overwhelmingly call Peoria home. Based on the USAO's grand jury investigation and pre-trial discovery, Mr. Schock presently expects that the vast majority of principal witnesses live in or near Peoria, or Washington, D.C. Indeed, in response to Mr. Schock's previous motion for intra-district transfer, the government acknowledged that 28 potential government fact witnesses are from Peoria. *See* Gov. Resp. to Def. Mot. for Intra-District Transfer to Peoria Division, Docket No. 12, at 7-8 ("Gov. Resp."). The government further noted that 16 additional potential witnesses "are from elsewhere in Illinois, including Springfield, Champaign, Jacksonville, Cahokia, Wenona, Canton, and Chicago." *Id.* at 8. Those locations, however, prove the point. Two actually

fall within the Peoria Division (Wenona, Canton), and two are outside of this District entirely (Chicago, Cahokia), leaving only two in the Springfield Division (Springfield, Jacksonville), and one in the Urbana Division (Champaign). The remaining potential witnesses, according to the government, reside outside of the state. *See id.* Thus, for those Illinois witnesses most likely to testify, and who presumably will have to drive to and from the Courthouse, the majority reside in the Peoria Division.

"[D]ue regard for the convenience of [these] witnesses," Fed. R. Crim. P. 18, thus compels transfer to Peoria; *see also Platt*, 376 U.S. at 243-44 (listing "location of possible witnesses" among factors to consider when assessing a transfer motion). Were trial to go forward outside Peoria, most of the Illinois witnesses would be forced to travel more than two hours round trip (whether to Springfield, Urbana, or Rock Island) to testify—many, in all likelihood, on multiple days. This travel time will only compound significant interruptions to the daily lives of these witnesses, and will trigger further costs associated with taking the necessary time off work, arranging for child care, and other consequences. To be sure, the burden of a trial on its witnesses is to some extent unavoidable. But with a more convenient and indeed more appropriate forum available in Peoria itself, this Court may easily and substantially ease the burden for many of those likely to be called to testify in this case. *See, e.g.*, *United States v. Burns*, 662 F.2d 1378, 1382 (11th Cir. 1981) (holding district court erred in setting trial "almost 100 miles from . . . the home of defendants and twenty-two of the twenty-four [in-state] witnesses"); *United States v. Torres-Rodriguez*, No. 08-30126, 2009 WL 458562, at *1 (S.D. Ill. Feb. 24, 2009) (granting motion for intradistrict transfer where the "majority of the government's witnesses" resided in one division, and "[t]he defendant has not named any witnesses for whom . . . a trial [in that division] would be more convenient"); *United States v. Cole*, 816 F. Supp. 2d 1202, 1203 (S.D. Ala. 2011) (granting

defendant's intradistrict transfer motion where "most or all of the witnesses likely to testify at trial reside in" the destination division). The burden on Mr. Schock is even more patent. Assignment of this case to a Division away from Mr. Schock's home in Peoria will require him to live in that Division throughout the trial, causing significant but entirely avoidable expense and inconvenience.

Second, the location of the potential witnesses confirms what is otherwise evident from the Indictment: to the extent this is an Illinois case, it is a Peoria case. Peoria is where certain principal events took place, where Mr. Schock lived and worked, where he maintained his principal district office, housed district records, employed district staff, and where Schock for Congress and related political committees, their staff, and documents were based. *See* Indictment at 9-11; *see also Platt*, 376 U.S. at 243-44 (listing "location of . . . defendant," "location of events likely to be in issue," and "location of documents and records likely to be involved" among factors to consider when assessing a transfer motion).

To be sure, the Government alleges misconduct by Mr. Schock in other locations—in Chicago, for instance, and Washington, D.C. Such variation is unavoidable given Mr. Schock's schedule and the myriad responsibilities he took on during his terms in Congress. But to the extent the alleged conduct occurred, as alleged by the Indictment, "in the Central District of Illinois," it took place overwhelmingly in Peoria. *See* Indictment at 32, *see also id.* at 36-40, 42-52. Indeed, the Government's theory of criminal liability centers on such conduct. *See, e.g.*, *id.* at 16 ("Defendant Schock caused this invoice to be sent via an interstate email communication from the staff member in Peoria to Defendant Schock."); *id.* at 18 ("Defendant Schock caused SFC . . . to purchase a 2014 Ford Fusion . . . for his District Chief of Staff in Peoria."); *id.* at 22 ("Defendant Schock . . . caused SVC to pay for such tickets by an electronic payment from SVC's bank account

in Peoria . . . ."); *id.* at 27 ("Defendant Schock hired an Illinois decorator/designer to redecorate . . . his Peoria apartment . . . ."); *id.* at 32-33 (alleging several wire transfers to "Schock's CEFCU account in Peoria"); *id.* at 35 ("[Schock] directed that a check for $11,000 be mailed to him at his residence in Peoria."); *id.* at 37 ("[Schock] knowingly caused to be delivered . . . a shipment/mailing . . . to Defendant Schock's Congressional Office in Peoria, Illinois.").

In contrast, very little is alleged to have been done in any other Division. In its previous response for example, the government could identify only incidental and sporadic connections between the allegations and Springfield (where the government had chosen to file the Indictment), including for example that Mr. Schock is alleged to have converted campaign funds, some of which he may have raised in Springfield area fundraisers. *See* Gov. Resp. at 5. But Mr. Schock is not charged with any crimes related to how funds were raised in Springfield fundraisers. Another example—noted by the Court in its denial of Mr. Schock's earlier motion—was that Mr. Schock allegedly defrauded constituents in connection with certain "fly-in events." *See id.* at 5; Opinion, Docket No. 14, at 7.[4] Those allegations, however, were the subject of Count 9 of the Indictment, which has since been dismissed. *See* Opinion, Docket No. 153, at 24-25. In short, the alleged contacts for any other Division are far fewer than the allegations of conduct occurring within the Peoria Division.

Courts routinely fix trial within the division where the misconduct occurred absent a compelling reason not to. As one court that granted a motion to transfer the case to a different division within the same district put it: "Rule 18 presumes that a case should be tried where the offenses at issue were committed." *United States v. Montemayor*, No. 13-0039, 2013 WL

---

[4] The other non-Peoria allegation noted by the Court was Mr. Schock's alleged payment to a decorator who lives in Jacksonville, Illinois, which is the subject of Count 8. *See* Opinion, Docket No. 14, at 7. Jacksonville, Illinois falls within the Springfield Division.

4459056, at *3 (S.D. Tex. Aug. 16, 2013); *see also United States v. Stanko*, 641 F. Supp. 2d 866, 873 (D. Neb. 2009) ("When the court determines what venue is most applicable, it must look at such factors as . . . where the event occurred."). Unless other appropriate factors direct otherwise then, a defendant should ordinarily be tried in the division where his alleged misconduct occurred. *See, e.g.*, *Lipscomb*, 299 F.3d at 340 (transfer from Dallas to Amarillo error, in part because "[n]ot a single relevant event occurred outside Dallas"); *United States v. Herbert*, 698 F.2d 981, 984 (9th Cir. 1983) (no transfer from Phoenix warranted where "the incidents alleged in the indictment occurred within the Phoenix Division"); *Burns*, 662 F.2d at 1382 ("We must remember in applying Rule 18 that Huntsville is almost 100 miles from Birmingham. . . . and the site of the alleged offenses . . . ."); *Montemayor*, 2013 WL 4459056, at *3 (transferring case from Houston to Laredo "because the case has no apparent ties to Houston"). In other words, this case lacks a nexus to any other Division in the Central District of Illinois.

Third, no countervailing factors suggest that a Division other than Peoria is the appropriate Division for this case. In certain cases, identifiable concerns of a practical nature may prompt a district court to select one division over another. *See* Fed. R. Crim. P. 18 ("The court must set the place of trial within the district with due regard for . . . the prompt administration of justice."); *see also Lipscomb*, 299 F.3d at 342-43 (considering not only "prompt administration," but also "docket management, courthouse space and security, and . . . pretrial publicity"); *Platt*, 376 U.S. at 243-44 (listing "relative accessibility of place of trial" and "docket condition of each district or division involved" among factors to consider when assessing a transfer motion). No such factors are at play here. Mr. Schock is unaware of either docket or facility conditions in Peoria that would significantly impede his right to a speedy, open, and fair trial.

In sum, Rule 18 calls upon a district court to "balance the competing interests and decide the place of trial" accordingly. *Torres-Rodriguez*, 2009 WL 458562, at *1. Here, that balance is clear. The Government's case will rest on the testimony of potentially more than two dozen Peoria witnesses, covering actions that occurred largely in Peoria (to the extent they took place in Illinois at all), by a man who both lived and worked in Peoria during the period at issue. Both common sense and the plain text of Rule 18 dictate that the case should be tried in Peoria.

## CONCLUSION

For the reasons stated above, Aaron J. Schock respectfully requests that the Court enter an order transferring this case to the Peoria Division for trial.

Dated: August 20, 2018

Respectfully submitted,

*/s/ George J. Terwilliger III*
_____
George J. Terwilliger III
Robert J. Bittman
Benjamin L. Hatch
Nicholas B. Lewis
**MCGUIREWOODS LLP**
2001 K Street N.W., Suite 400
Washington, D.C. 20006-1040
Tel: 202.857.2473
Fax: 202.828.2965
Email: gterwilliger@mcguirewoods.com

*/s/ Christina M. Egan*
_____
Christina M. Egan
**MCGUIREWOODS LLP**
77 West Wacker Drive
Suite 4100
Chicago, IL 60601-1818
Tel: 312.750.8644
Fax: 312.698.4502
Email: cegan@mcguirewoods.com

9

/s/ *Jeffrey B. Lang*
_____
Jeffrey B. Lang
**LANE & WATERMAN LLP**
220 N. Main Street, Suite 600
Davenport, Iowa 52801-1987
Tel: 563.333.6647
Fax: 563.324.1616
Email: jlang@L-WLaw.com

*Counsel for Aaron J. Schock*

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing instrument was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record at their respective email addresses disclosed on the pleadings on this 20th day of August, 2018.

*/s/ George J. Terwilliger III*
_____
George J. Terwilliger III